November 30, 2023

The Honorable S. Dave Vatti,
United States Magistrate Judge
Brien McMahon Federal Building
U.S. Courthouse
915 Lafayette Boulevard
Bridgeport, CT 06604

Re:   **3:22-cv-00580-RNC DeNinno, et al v. North Coast Sea-Foods Corp, et al**
      <u>**Plaintiffs' Legal Brief re Parties Discovery Dispute**</u>

Dear Judge Vatti,

Defendants objected to various discovery requests served by plaintiffs. Counsel for the parties conferred, but were unable to reach agreement as to certain objections. Exhibit A contains disputed discovery as to defendant North Coast Sea-Foods Corp. ("North Coast") and Exhibit B pertains to defendant Big Y Food's Inc. ("Big Y").

This is a product liability action. Plaintiffs, who are husband and wife, allege that on July 27, 2018, they purchased from defendant Big Y a frozen, precooked seafood product (King Crab Legs) that was contaminated with Salmonella. Defendant North Coast was a manufacturer/distributor of the crab. The plaintiffs ate the crab that same day and in the early morning on July 28, 2018 both became violently ill from food poisoning. The plaintiff wife's symptoms were short term and resolved fully. The plaintiff husband suffered permanent and severe medical conditions from the food poisoning including acute kidney failure, inflammatory arthritis and gastrointestinal injury.

## <u>AS TO NORTH COAST (Exhibit A)</u>

**Interrogatory No. 8 - Plaintiffs seek details concerning any positive microbiological for Salmonella or other foodborne pathogens or environmental monitoring test results at any North Coast processing facility for the ten years prior to the subject incident.** By way of brief background, Salmonella is a bacteria that is not endemic to seafood (unlike poultry) and it is considered by the U.S. Food & Drug Administration (FDA) to be an adulterant if found in seafood. The FDA expects zero or non-detectable levels of Salmonella in seafood regardless of whether it is intended to be cooked before consumption or it is ready-to-eat. Seafood contaminated with Salmonella is the result of insanitation. Seafood products can be contaminated with Salmonella, or other adulterating foodborne pathogens like Listeria, during processing, typically through exposure to contaminated food contact surfaces in the processing environment. A proper food safety management system for a seafood processing company includes both control and assurance activities. This interrogatory seeks positive test results of environmental monitoring, which is a control activity, and microbiological testing, which is an assurance activity.

1

<u>Faulkner & Graves, P.C.</u>
1 Montauk ▪ Suite 301 ▪New London, CT  06320 ▪ Tel: (860) 442-9900 ▪ Fax: (860) 443-6428 ▪ JURIS # 103027

The interrogatory is not overly broad or burdensome in that it is both limited in time (10 years prior) and scope (positive results). Positive results from either type of testing are relevant to the plaintiff's assertion against North Coast that the subject crab was likely contaminated with salmonella. Prior positive environmental monitoring tests reasonably could lead to discovery of admissible evidence as to whether there were sanitation/contamination issues at North Coast processing facilities, whether the defendant took appropriate action to investigate and remedy potential causes of contamination, or whether sufficient environmental monitoring was in effect. Prior positive microbiological tests reasonably could lead to discovery of admissible evidence as to whether the defendant's prevention strategies are sufficient, whether the defendant took appropriate action to investigate and remedy potential causes of contamination, whether a sufficient quality assurance program was in effect, or identify issues with a particular seafood supplier or fishery.

Defendant seeks to provide limited information as to microbiological testing on crab legs only. But, as explained above, salmonella is an adulterant in seafood. Therefore, contamination of any seafood with Salmonella, or other adulterant pathogen, could reasonably lead to the discovery of admissible evidence as to defendant's sanitation practices and whether adequate food safety measures were in place. Defendant also seeks to disclose environmental testing limited to two specific locations that the subject crab was handled, but positive environmental monitoring tests at any locations within the defendant's processing facilities would be relevant to defendant's sanitation practices. For example, poor sanitation of bathrooms or storage rooms can lead to employees making contact with a pathogen and transferring it to another location where unpackaged food is handled. Pathogens can be transferred on various items, e.g., shoes, gloves, equipment, trays or bins. Proper environmental monitoring programs comprehensively address entire facilities, not just locations of direct food contact. Further, the two locations specified by defendant do not include all locations where the subject crab was stored or handled (e.g., sensory lab, transport truck, receiving department).

**Interrogatory No. 28 - Plaintiffs seek details concerning complaints about seafood products received by North Coast from the same fisherman or supplier on the same date as the subject crab.** This request is especially narrow in time and scope. If there were complaints about other seafood received by North Coast on that same date from the same fishery or supplier as the subject crab it would clearly be relevant toward establishing that a contamination had occurred of the product at the fishermen/supplier level of the food chain supply. The defendants North Coast and Big Y are each alleged to be product sellers and under the doctrine of strict liability, are liable if the subject crab they sold was unreasonably dangerous to the consumer.

**Interrogatory No. 29 - Plaintiffs seek details concerning complaints of illness from consumption of seafood products received by North Coast from the same fisherman or supplier as the subject crab for 5 years prior to the incident through the present.** The interrogatory is not overly broad or burdensome in that it is both limited in time (5 years prior through the present) and scope (complaints of illness/same fishery or supplier). Prior or subsequent complaints of illness from seafood from the same fishermen or supplier reasonably could lead to admissible evidence concerning

2

Faulkner & Graves, P.C.
1 Montauk ▪ Suite 301 ▪ New London, CT  06320 ▪ Tel: (860) 442-9900 ▪ Fax: (860) 443-6428 ▪ JURIS # 103027

substandard food safety practices of the fishery or supplier. For instance, Salmonella contamination of seafood can occur from fecal contamination of harvest waters or improper sanitation or storage on fishing vessels. Based on discovery to date, the subject crab was sold to North Coast by a supplier, Arctic Seafoods, who hired/utilized Russian fishing vessels to harvest the crab from Russian waters. Pre-cooking and freezing of the crab would take place on these fishing vessels and then transported to Arctic Seafoods for storage. If there were complaints about other seafood received by North Coast from the same fishing vessel or supplier of the subject crab it could reasonably lead to the discovery of admissible evidence as to improper food safety practices at the fishermen/supplier level of the food chain supply relative to for example, harvesting, sanitation, cooking, or storage.

**Interrogatory No. 30 - Plaintiffs seek details concerning complaints of illness from consumption of seafood products distributed or sold by North Coast for 5 years prior to the incident through the present.** The interrogatory is not overly broad or burdensome in that it is both limited in time (5 years prior through the present) and scope (complaints of illness). For the reasons explained and set forth above for Interrogatory No. 8, this information could lead to discovery of admissible evidence as to whether there were sanitation/contamination issues at North Coast processing facilities, whether the defendant took appropriate action to investigate and remedy potential causes of contamination, and whether sufficient food safety handling practices were in effect, including prevention and quality assurance strategies.

**Production Request No. 51 - Plaintiffs seek documents concerning product withdrawal or recalls of North Coast seafood products for 10 years prior through the present.** The interrogatory is not overly broad or burdensome in that it is both limited in time (10 years prior through the present) and scope (product withdrawals or recalls). For the reasons explained and set forth above for Interrogatory No. 8, this information could lead to discovery of admissible evidence as to whether there were sanitation/contamination issues at North Coast processing facilities, whether the defendant took appropriate action to investigate and remedy potential causes of contamination, and whether sufficient food safety handling practices were in effect, including prevention and quality assurance strategies.

**Production Request No. 52 - Plaintiffs seek documents concerning food poisoning complaints by consumers concerning Salmonella for the past 10 years.** The interrogatory is not overly broad or burdensome in that it is both limited in time (past 10 years) and scope (complaints concerning Salmonella). See basis set forth above for Production Request No 51.

**Production Request No. 53 - Plaintiffs seek documents concerning North Coast product withdrawal or recalls due to Salmonella for the past 10 years.** The interrogatory is not overly broad or burdensome in that it is both limited in time (past 10 years) and scope (withdrawal or recalls concerning Salmonella). See basis set forth above for Production Request No 51.

**AS TO BIG Y (Exhibit B)**

3

Faulkner & Graves, P.C.
1 Montauk ▪ Suite 301 ▪New London, CT 06320 ▪ Tel: (860) 442-9900 ▪ Fax: (860) 443-6428 ▪ JURIS # 103027

**Interrogatory No. 16 - Plaintiffs seek information concerning certain Big Y employees.** The defendant objects on the basis that the objection is overly broad and unduly burdensome. However, the interrogatory seeks details concerning only employees whose job responsibilities would have caused them to work or otherwise be present in the area behind the fresh seafood counter in the subject store between 6/13/2018 and 7/27/2016 (an approximate 6-week period). Beyond information related to the subject crab product itself, these individuals may possess information relevant to the operation of the seafood department and food safety practices and/or violations. Additionally, information concerning sick employees involved with the fresh seafood department in the specified period could lead to admissible evidence if their sickness involved symptoms of infection with Salmonella. The defendant provides limited information as to who may have handled the subject crab product on the date it was sold to the plaintiffs, however the batch of crab product containing the subject crab may have been exposed to contamination prior to the date of sale and in manners other than direct handling (ie. improper cleaning of display case, contaminated ice).

**Interrogatory No. 20 - Plaintiff seeks the identity of certain Big Y employees of the subject store employed at that location between 1/1/2018 and 10/1/2018.** The defendant objects on the basis that the objection is overly broad and not proportional to the case. However, the interrogatory is limited to the subject store and a nine-month period. It is further limited to fresh seafood department employees and management level employees. These Big Y employees may possess information relevant to the operation of the seafood department and food safety practices and/or violations. With regard to the limited identities provided by the defendant, they have not fully identified these persons (address/employer) or other info sought (date of hire/termination, current job title, if applicable).

**Interrogatory No. 28 - Plaintiffs seek details concerning complaints of sickness from North Coast seafood products for 5 years prior to the incident through the present.** The interrogatory is not overly broad or burdensome in that it is both limited in time (5 years prior through the present) and scope (sickness from North Coast products). See basis set forth above for North Coast Production Request No 51.

**Interrogatory No. 29 - Plaintiffs seek details concerning complaints of sickness from seafood products purchased from the fresh seafood department of any Big Y for 5 years prior to the present.** The interrogatory is not overly broad or burdensome in that it is both limited in time (5 years prior through the present) and scope (seafood products from the fresh seafood departments). For reasons similar to those expressed above for North Coast Interrogatory No. 8, complaints of other food poisoning from seafood products purchased from Big Y's seafood departments could reasonably lead to the discovery of admissible evidence of improper food safety practices by Big Y for their fresh seafood departments resulting in contamination/sanitation issues of seafood products sold to the consumer.

**Interrogatory No. 31 - Plaintiffs seek information concerning food safety inspections by any regulatory agencies for five years prior through the present at**

4

Faulkner & Graves, P.C.
1 Montauk ▪ Suite 301 ▪ New London, CT 06320 ▪ Tel: (860) 442-9900 ▪ Fax: (860) 443-6428 ▪ JURIS # 103027

**the subject store.** The interrogatory is not overly broad or burdensome in that it is both limited in time (5 years prior through the present) and scope (concerning the fresh seafood department of the subject store). Inspections by regulatory agencies concerning food safety of the fresh seafood department of the subject store could reasonably lead to discovery of admissible evidence of contamination/sanitation issues or improper food safety practices by Big Y in the fresh seafood department at the subject store.

**Production Request No. 26 - The plaintiff seeks training information for employees employed in the fresh seafood department of the subject store between 6/13/2018 and 7/27/2018 or employees otherwise involved with subject crab product or its storage locations.** Proper employee training is a key component towards ensuring safe food handling and reducing the risks of contamination. The plaintiff seeks training records for a limited period of 3 years prior to the food poisoning incident. The request is further limited only to certain specified employees who worked in the fresh seafood department or other locations where the subject crab was stored in the subject Big Y store, during the 6 weeks leading up to the incident.

**Production Request No. 58 - Plaintiffs seek documents concerning food poisoning complaints by consumers concerning Salmonella for the past 10 years.** The interrogatory is not overly broad or burdensome in that it is both limited in time (past 10 years) and scope (complaints concerning Salmonella). For reasons similar to those expressed above for North Coast Interrogatory No. 8, complaints of Salmonella food poisoning by products purchased from Big Y could reasonably lead to the discovery of admissible evidence of contamination/sanitation issues or improper food safety practices by Big Y.

**Production Request No. 59 - Plaintiffs seek documents concerning Big Y product withdrawal or recalls due to Salmonella for the past 10 years.** The interrogatory is not overly broad or burdensome in that it is both limited in time (past 10 years) and scope (withdrawal or recalls concerning Salmonella). See basis set forth above for Big Y Production Request No 58.

        Respectfully submitted on behalf of
        The Plaintiffs:

        /s/ *Shelley L. Graves*
        Shelley L. Graves (ct 14094)

cc: Attorney Kevin J. O'Leary via email: koleary@coughlinbetke.com