UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

STEPHEN DENINNO, and MARY DENINNO
*Plaintiffs*,
v.
NORTH COAST SEA-FOODS CORP., doing business as
NORTH COAST SEAFOODS, and BIG Y FOODS INC.
*Defendants*.

3:22-cv-00580-SVN
Friday, August 14, 2026

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMARY JUDGMENT**

This is an alleged food-poisoning case in which Deninno has asserted claims against Big Y and North Coast stemming from a hospitalization in July of 2018. The basis of Dennino's Complaint is that he consumed king crab legs he alleges were contaminated with salmonella and became ill. Discovery, however, has shown that Deninno has no evidence to support his assertions; **no fact or expert witness in this case has identified a single reported case of salmonella contaminated king crab legs**, or established that these specific king crab legs were contaminated with salmonella. Instead, Deninno hopes to prove his claims based solely on: (1) speculative and incomplete expert reports that should be excluded by the Court; (2) the fact that Deninno tested positive on an antibody test for salmonella three months after his hospitalization, where the test expressly stated it had **no diagnostic value** in his case; and (3) that Deninno and his wife both became sick at the same time. This evidence is insufficient for Deninno to overcome summary judgment. The motion should accordingly be granted under Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure 56.

## BACKGROUND

### I. Deninno's hospitalization for gastroenteritis

Defendant North Coast Sea Foods is the processor of the king crab legs in this case. ECF 78-2 ¶ 1. On July 28, 2017, Stephen Deninno purchased 3 pounds of frozen king crab legs from defendant Big Y Foods Inc.. ECF 78-2 ¶¶ 2, 3. On July 27, 2018, Deninno and his wife ate thawed king crab legs for lunch and reheated king crab legs with dinner. ECF 78-2 ¶ 4. On July 31, 2018 at 2:54 PM, Deninno was admitted to Hartford Healthcare Backus Hospital. ECF 78-2 ¶ 5. He reported on admission that he "believes that he suffered from food poisoning from crab that he ate on Friday, he and his wife both felt ill with the identical illness shortly after." ECF. 78 ¶ 5. On admission, his assessment was acute gastroenteritis, renal failure, and hypertension. ECF 78-2 ¶ 6. Although a stool sample test was ordered, Deninno could not produce a stool. ECF 78-2 ¶ 7. Deninno's wife was never admitted to the hospital or given a stool sample test for salmonella. At discharge, his final diagnoses included "Toxic effect or unspecified noxious substance eaten as food, accidental (unintentional), initial encounter." ECF 78-2 ¶ 8.

On August 14, 2018, Deninno presented to Plainfield Backus Emergency Care with "some constant dull pain in his bilateral flanks which had him concerned. He states he called his primary care doctor and asked them to fax over some labs so he could check his kidney function." ECF 78-2 ¶ 9. He stated "his bowels are back to normal."

### II. Deninno's subsequent treatment for osteoarthritis

On October 12, 2018, Deninno presented to Orthopedic Partners, where his record recited he "previously had difficulties with his right knee. He has also been seen herein the past for ankle sprain, left thumb carpometacarpal joint arthritis, impingement syndrome in the right

shoulder, and he comes in today for evaluation of his left knee." ECF 78-2 ¶ 10. Deninno had an ultrasound of the knee that showed a left Baker's cyst and x-rays at Backus Hospital on September 29 showing osteoarthritic changes. ECF 78-2 ¶ 10. Deninno was diagnosed with left knee mild osteoarthritis. ECF 78-2 ¶ 11.

**III. Deninno's alleged diagnosis with salmonella**

On October 18, 2018, Deninno presented to J. Scott Toder, MD. His "chief complaint was left knee swelling for one-and-a-half months and history of gout on Uloric for years." ECF 78-2 ¶ 12. On October 30, 2018, rheumatologist Dr. Toder stated "Off colchicine as the cause fo diarrhea and it did not help;" and "Check salmonella antibody since it is three weeks post diarrhea illness consistent with reactive arthritis." ECF 78-2 ¶¶ 13-14.

On November 5, 2018, Lady of Fatima Hospital Laboratory ran a salmonella antibody test with the result "POSITIVE" for Salmonella H, Type B. The test result included the following disclaimer:

> Antibodies to Salmonella flagellar (H) and somatic (O) antigens typically peak 305 weeks after infection. A positive result in this assay is equivalent to a titer of >=1:160 by tube agglutination (Widal). **Results should not be considered diagnostic unless confirmed by culture**.

ECF 78-2 ¶ 15 (emphasis added).

**IV. Deninno's subsequent treatment for hypomagnesemia**

On January 6, 2019, Deninno presented to Plainfield Backus Emergency Care Center where the emergency department providers' note stated he had generalized weakness and tingling, with work up showing significant hypomagnesemia treated with IV magnesium. ECF

78-2 ¶ 16. From that date, Deninno continued to receive biologic treatment from Dr. Toder and magnesium infusions.

### V. Deninno's complaint

Deninno and his wife filed an eight-count complaint respectively alleging products liability claims and punitive damages claims under the Connecticut Products Liability Act against both North Coast and Big Y. ECF 1-2.

## LEGAL STANDARDS

### I. Summary judgment standard under Federal Rule of Civil Procedure 56

A motion for summary judgment may be granted only when there are no issues of material fact in dispute and the moving party is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. Rule 56(a); *In re Dana Corp*., 574 F.3d 129, 151 (2d Cir. 2009). The moving party may satisfy his burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co*., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (quotation marks and citations omitted). Once the moving party meets this burden, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-moving party must present evidence that would allow a reasonable jury to find in its favor in order to defeat the motion for summary judgment. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). The existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment. *Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 163 (2d Cir. 2008).

**II. Strict products liability under Connecticut law**

In order to prevail in an action pursuant to the Connecticut Products Liability Act, §52-572m et seq., the plaintiff must establish that: "(1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition, unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition." *Jefferson v. PRRC, Inc.*, 2016 LX 15658, at *8 (Super. Ct. Feb. 23, 2016) (Elgo, J.).

**ARGUMENT**

**I. Plaintiff's product liability claims must fail for lack of admissible expert testimony that the king crab caused Deninno to develop Salmonella**

As set forth in the motions filed herewith, plaintiff's experts–retained emergency medicine Dr. Gustin, retained infectious disease Dr. Cumbo, and treating gastroenterologist Dr. Sang have offered opinion based on speculation that are unreliable. For instance, Drs. Gustin and Cumbo both relied upon the antibody test that stated by its very terms that it was not diagnostic to arrive on the diagnosis of salmonella; Dr. Sang merely took it as hearsay from Deninno himself. *See* ECF 75-1, 76-1, 77-1. All three doctors admitted they did not know how, when, or where the king crab was allegedly contaminated with salmonella. All three doctors improperly relied upon mere temporal proximity–that Deninno's diarrhea and hypomagnesemia started three and five months after his hospitalization–to reach their opinions that those sequela resulted from that hospitalization. And, all three doctors admitted that they did not know the cause of Deninno's hypomagnesemia. Because their testimony is not admissible under Federal Rule of Evidence 702, Big Y and North coast will necessarily be entitled to summary judgment.

This is because the cause of foodborne illness "poses a medical question that cannot be answered by a layperson; thus, Dunning's own statements cannot establish causation here." *Dunning v. Amtrak*, 2014 U.S. Dist. LEXIS 120065, at *7 (D. Conn. Aug. 28, 2014) (Hall, J.), citing *Fane v. Zimmer, Inc*., 927 F.2d 124, 131 (2d Cir. 1991) (determining that causation of a complex physical injury raised a medical question requiring expert medical opinion evidence). As plaintiffs have no competent expert testimony to establish that the king crab was defective because it was contaminated with salmonella, or that the king crab caused Deninno become infected with salmonella which in turn caused his other rheumatological and gastroenterological conditions, Deninno cannot offer evidence that the king crab "was in a defective condition when [he] consumed it, or that [his] illness was attributable to her consumption of the [king crab], and thus has failed to create a genuine issue of material fact on this matter." *Id.* at *5. That Deninno's medical records reference "food poisoning" and "salmonella" does not establish that his injury was caused by the king crab. *Id.* at *6. Rather, they reflect only Deninno's own report to Big Y and medical staff that he began having diarrhea after consuming the king crab. *Id.* Because Deninno has adduced no competent expert evidence of defect or causation, the motion for summary judgment should be granted.

## II. Plaintiff otherwise failed to adduce evidence that the king crab was contaminated with salmonella

Even if the Court were somehow to permit the plaintiffs' experts to offer their speculative opinions, Big Y and North Coast would still be entitled to summary judgment on plaintiff's claims because there is no competent evidence that Deninno had salmonella, or that the king crab was infected with salmonella. The king crab itself was never tested for salmonella, and Deninno's only test–an antibody test administered 3 months after his hospitalization–stated that it

was of no diagnostic value in this case. And, indeed, none of the doctors in this case, including the doctor who ordered it, had any familiarity with that test. *See* ECF 75, 76-2 at 175-6, 77. The mere fact that Deninno and his wife became sick after eating king crab does not establish that the king crab was defective under the Connecticut Products Liability Act, nor does it establish that the king crab caused Deninno's many claimed injuries in this case.

After all, every one of plaintiff's experts testified that they did not know where, when, or how the king crab was allegedly contaminated with salmonella. *See* ECF 75-1, 76-1, 77-1. Thus, there is **no competent evidence** in this case that the king crab was actually contaminated. In the absence of any direct evidence of contamination, the plaintiff has instead relied on self-serving testimony and a flawed test of no diagnostic value. That is, there was never a confirmed case of salmonella here. Further, not a single expert in this case was able to identify a single reported instance of king crab contamination with salmonella–here or in any other instance ever–and plaintiff has not come forward with any other evidence that would establish the same.

On the other hand, Big Y and North Coast have submitted expert reports that accord the facts of this case. These include a gastroenterology expert, Dr. Storch, who confirms that there is no evidence that Mr. Deninno got sick from king crab ingestion as opposed to something else, and that in the absence of an actual confirmed stool test for salmonella, it was impossible to make such a diagnosis. Ex. G at 1. These also include a rheumatology expert, Dr. Gibofsky, who explains that Deninno's numerous preexisting conditions can cause the musculoskeletal pains he claims in this case. Ex. H at 2.

Thus, the Court should find that "there are no genuine issues of material fact as the plaintiff has failed to provide any support for the allegations in the complaint that the defendant

was negligent in that it failed to properly inspect the food sold to the plaintiff; sold defective or contaminated food to the plaintiff; was not sufficiently careful in making or distributing food to the plaintiff; and failed to exercise reasonable care in making or distributing food to the plaintiff." *Stradford v. 2K16 Rests., LLC*, 2021 LX 24910, at *12-13 (Super. Ct. May 5, 2021) (summary judgment where no nexus between food product and alleged infection). Plaintiff's insistence that he and his wife both became sick after eating the king crab does not meet the standard required under the Connecticut Products Liability Act. *See Jefferson v. PRRC, Inc.*, 2016 Conn. Super. LEXIS 417, at *4 (Super. Ct. Feb. 23, 2016) (Elgo, J.) (granting summary judgment where "[u]ltimately, the plaintiff's case amounts to evidence that she and her son ate turkey wings which she claimed smelled spoiled, something she concluded after the fact since she did not believe they were spoiled when she and her son consumed the turkey.").

Plaintiff has only come forward with evidence of temporal proximity, and that "provides no basis for a rational finding" in respect of his claim; his testimony "simply recounts that, after eating food [Big Y], he became sick within hours. At best, the evidence could support a reasonable inference of temporal proximity, but such an inference does not support an inference of causation, because there could be any number of reasons for the plaintiff's sickness and the plaintiff has no expert testimony to support causation." *Bucknor v. Sabatini*,, 2026 LX 28280, at *8-9 (Super. Ct. Feb. 11, 2026) (Chavey, J.), *citing Jefferson, supra* at *8 (granting summary judgment on plaintiff's product liability claim related to alleged food poisoning where plaintiff failed to present evidence to support causation; holding that expert evidence is required on this issue because "the cause of the plaintiff's illness posed a medical question [and] lay testimony

was insufficient"). By the same reasoning, there is no genuine issue of material fact here. The motion for summary judgment should be granted.

**III. Plaintiff failed to establish causation of his hypomagnesemia**

Even if the Court were somehow to permit the plaintiffs' experts to offer their speculative opinions, Big Y and North Coast would still be entitled to summary judgment on plaintiff's claim that he had hypomagnesemia that specifically resulted from the king crab ingestion, because every single one of his doctors and expert witnesses admitted that they had no idea what was causing his hypomagnesemia. *See* ECF 75-4 at 261-2 ("I don't know what's causing his hypomagnesemia"), 76-3 ("Etiology, I don't know"), 77-2 at 42, 43, (his "assumption," "conjecture," "hypothesis," and "supposition"). There was nothing in Deninno's numerous colonoscopies, endoscopies, or biopsies that would indicate such a condition; his condition did not improve when he stopped and started various medications; and nothing in the medical literature that would support such a causal connection. There is simply no competent evidence in Deninno's medical records or otherwise that would support such a claim. The Court should therefore grant the motion for summary judgment on these damages.

That is, even if the Court finds a question of fact may exist with respect to the king crab and salmonella, partial summary judgment is warranted as to the plaintiff's claims related to hypomagnesemia, because there is no competent evidence of a causal connection that meets the standard under *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993).

**IV. Plaintiffs' punitive damages claims fail as a matter of law**

Finally, Deninno has alleged punitive damages against Big Y and North Coast, but there is no evidence whatsoever to support such a claim. "Punitive damages may be awarded if the

claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product." C.G.S. § 52-240b. "Reckless misconduct refers to highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. Recklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater … than that which is necessary to make his conduct negligent. Recklessness, therefore, is more than negligence and also is more than gross negligence." *Sutton v. Soul for Real, LLC*, 2010 Conn. Super. LEXIS 425, 2010 WL 1052934 at *1 (Conn. Super. Feb. 16, 2010), *quoting Rubel v. Wainwright*, 86 Conn.App. 728, 740-41, 862 A.2d 863 (2005).

Here, Big Y and North Coast have presented evidence that the king crab legs complied with regulatory standards, were subject to period audits, and that this is the only incident known to either Big Y or North Coast concerning alleged contamination of the king crab legs with salmonella or anything else. *See Reiske v. Black & Decker (U.S.) Inc.*, 2012 U.S. Dist. LEXIS 27845, at *5-8 (D. Conn. Mar. 2, 2012) (Thompson, J.). Even setting aside the evidence in this case–none of which supports a finding of recklessness–the plaintiff's own allegations if taken as true would not support such a finding. "There is no evidence of a conscious choice by the defendant of a course of action with knowledge of the serious danger to others, or with knowledge of facts that would disclose this danger to a reasonable person. Because the defendant had no prior notice of any manufacturing defect (or notice of facts that would have disclosed

such a defect to a reasonable person) … it could not have recklessly disregarded the risk associated with such a defect." *Id.* (summary judgment as to punitive damages claim).

Indeed, "[I]n this case, the plaintiff alleges that the defendant failed to prepare, inspect and provide safety precautions to prevent the distribution of unfit food, that the defendant was aware that its conduct posed a risk of harm to others and that its conduct was a substantial factor in causing the plaintiff's injuries. He does not, however, allege facts that demonstrate that the defendant acted in reckless disregard for the safety of product users; General Statutes § 52-240b; or that the defendant was engaged in highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high decree of danger is apparent." *Angiolillo v. Stanwich Club*, 2004 Conn. Super. LEXIS 314, at *9 (Super. Ct. Jan. 23, 2004) (D'Andrea, J.) (citations, quotations omitted). The motion for summary judgment should be granted.

**CONCLUSION**

There is no genuine dispute of material fact that the plaintiff has failed to establish a prima facie case of products liability against Big Y and North Coast, because he has failed to establish a defect, causal connection, or injury causation by admissible expert testimony. Further, there is no other competent record evidence that establishes the king crab in this case was contaminated with salmonella. Deninno cannot contravene the record evidence showing his hypomagnesemia in January 2019 was never attributed to his hospitalization in July 2018. The motion for summary judgment should be granted under Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure 56.

Respectfully submitted,
North Coast Sea-Foods Corp., doing business as North Coast Seafoods, and Big Y Foods Inc.
By their attorneys,

Ben Levites

Kevin J. O'Leary, ct30271
Benjamin H. Levites, ct30481
Coughlin Betke LLP
175 Federal Street
Boston, MA 02110
(617) 988-8050
koleary@coughlinbetke.com
blevites@coughlinbetke.com

**CERTIFICATE OF SERVICE**

I hereby certify that service is made on all parties through the court's CM/ECF system on Friday, August 14, 2026.

Ben Levites

Benjamin Levites